IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| MICHAEL T. BENSON, | **MEMORANDUM DECISION AND ORDER REGARDING DISCOVERY** |
|---|---|
| Plaintiff, | |
| v. | Case No. 2:10-cv-00275-TS |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | District Judge Ted Stewart |
| | Magistrate Judge David Nuffer |
| Defendant. | |

During scheduling, a conflict between the parties arose over whether discovery would be allowed in this ERISA case. Magistrate Judge Nuffer instructed both parties to brief the issue to prepare for the initial pretrial conference.[1] Having carefully reviewed the filings,[2] Plaintiff's request for limited discovery is GRANTED.

## BACKGROUND

Michael T. Benson's late wife, Janice K. Benson ("Kristy"), worked for Zion's Bancorporation (Zions).[3] Zions offered its employees a disability insurance policy and a life insurance policy, both of which Kristy participated in.[4] After Kristy became disabled, she began collecting from the disability insurance policy, and received a waiver of the premium on her life insurance policy.[5]

---

[1] Docket Text Order [Ordering Briefing], docket no. 14, filed June 8, 2010.

[2] Plaintiff's Memorandum in Support of Limited Discovery (Supporting Memorandum), docket no. 16, filed July 2, 2010; Hartford's Memorandum of Law in Opposition to Benson's Request to Conduct Limited Discovery (Opposing Memorandum).

[3] Supporting Memorandum at 3.

[4] *Id.*

[5] *Id.*

In 2009, Hartford Life and Accident Insurance Company (Hartford) cancelled the waiver of Kristy's life insurance premiums, claiming Kristy did not meet the definition of disability under that life insurance plan.[6] Kristy appealed the decision.[7] In the appeal process, Hartford sent her claim to University Disability Consortium (UDC) for review.[8] The UDC physicians confirmed Hartford's decision that Kristy was not disabled for the purposes of the life insurance premium waiver.[9]

In August 2009, Kristy passed away.[10] Plaintiff filed a claim for his late wife's life insurance benefits, but Hartford responded by stating that Kristy did not have a life insurance policy at the time of her death, because of the termination of her premium waiver months before.[11] Plaintiff then filed this lawsuit.[12]

During the drafting of the scheduling order, the parties were unable to agree whether discovery was appropriate in this case.[13] Plaintiff seeks discovery to investigate whether conflicts of interest between Hartford and UDC, or Hartford and Zions, unfairly biased the review of Kristy's disabled status.[14] Defendant argues that discovery in ERISA cases, at least under these circumstances, is not appropriate.[15]

---

[6] *Id.*

[7] *Id.*

[8] *Id.* at 3–4.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

[12] *See* Complaint, docket no. 2, filed March 20, 2010.

[13] Supporting Memorandum at 2.

[14] *Id.* at 9–10.

[15] Opposing Memorandum at 2.

ANALYSIS

Traditionally courts reviewing the denial of insurance claims by an administrator under ERISA make a limited review based on the administrative record, which makes discovery unnecessary and inappropriate. Courts have allowed discovery under certain circumstances, however, particularly when it is necessary to determine if there is a conflict of interest.

Potential conflicts of interest in these insurance cases became more important after the Supreme Court's ruling in *Metlife v. Glenn*.[16] When courts review the denial of benefits under an ERISA plan, the appropriate standard of review is generally very deferential.[17] In *Glenn* the court held that, while the deferential review applies even when there is a conflict of interest potentially affecting the decision, "the reviewing judge [is required] to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion."[18] In the wake of *Glenn*, courts have struggled to determine when discovery in these ERISA cases is appropriate.[19]

Both before and after *Glenn*, courts have limited or denied discovery concerning the denial of insurance claims. In many of these cases denying or limiting discovery, the plaintiffs were asking for additional discovery on their medical conditions and inability to obtain employment.[20] In other cases, such as when the argument was raised in a situation where the

---

[16] *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008).

[17] *Id.* at 2348.

[18] *Id.* at 2350.

[19] For a survey of the field after *Glenn*, see Elizabeth J. Bondurant, *Standard of Review and Discovery after Glenn: The Effect of the Glenn Standard of Review on the Role of Discovery in Cases Involving Conflicts of Interest*, 77 Def. Couns. J. 120, 124–32 (2010).

[20] *See DeGrado v. Jefferson Pilot Financial Ins.*, 451 F.3d 1161, 1169 (10th Cir. 2006) (chastising the district court for considering a deposition concerning plaintiff's ability to work because the information had not been available to the administrative reviewer); *Hemphill v. Unisys Cop.*, 855 F.Supp. 1225, 1239 (D. Utah 1994) (prohibiting the plaintiff from calling new witnesses, who had not been present during the administrative review process, to testify concerning plaintiff's entitlement to benefits).

defendant had no opportunity to respond, discovery was denied for procedural reasons.[21] This case is not similar to those cases, because Plaintiff is seeking discovery about a conflict of interest arising from Hartford and UDC's relationship and practices.

The Tenth Circuit discussed a conflict of interest very similar to the one alleged in this case, in *Rizzi v. Hartford*.[22] The plaintiff in *Rizzi* was suing Hartford as well, and claimed there was a conflict of interest between Hartford and the reviewing UDC physicians.[23] The court was not persuaded by her argument, but the facts in *Rizzi* were very different than this case. While Kristy was clearly ill and continued to receive disability income payments until her death,[24] the plaintiff in *Rizzi* repeatedly lied to doctors about her abilities to perform routine tasks, even after she was secretly videotaped running errands, attending college classes, and walking her dog.[25] Furthermore, the court stated it may have been more sympathetic to Rizzi's argument if she had presented *any evidence* that UDC had a financial incentive to deny claims referred by Hartford.

Rizzi relied on *Caplan v. CNA Financial*, in which a court did allow discovery into whether a conflict of interest exists because of Hartford and UDC's relationship and practices.[26] The *Rizzi* court discussed *Caplan* and the evidence presented by the *Caplan* plaintiff following discovery:

> To support his argument, Caplan provided admissible evidence showing UDC obtained nearly seventy-five percent of its revenue from Hartford's claim reviews and had reduced its hourly rates for Hartford-related work from $300 an hour to $225 as part of a 'volume discount type arrangement.' UDC's gross revenue had increased between 50 and 100 percent after it signed its contract to provide

---

[21] *See Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 928 (10th Cir. 2006).

[22] *Rizzi v. Hartford Life and Accident Ins.*, 2010 WL 2473858 *8–10 (10th Cir. 2010).

[23] *Id.*

[24] Supporting Memorandum at 4.

[25] *Rizzi* at *3–5.

[26] *Id.* at *8 (citing *Caplan v. CNA Financial Corp.*, 544 F.Supp.2d 984 (N.D. Cal. 2008)).

> services to Hartford; Hartford had paid UDC more than $13 million between 2002 and 2008 for consulting services. He also presented evidence that the physician who reviewed his claim had performed chart reviews for UDC 'producing 217 evaluations for 202 Hartford claimants between January 1, 2005 and September 30, 2007 . . . . [and] of these 202 claimants, he found that 193 of them were capable of working full-time in some type of position under appropriate restrictions.'[27]

With this evidence before it, the *Caplan* court found that the relationship between Hartford and UDC incentivized UDC to deny claims, in order to "increase the chances that Hartford will return to UDC in the future."[28] Having made this determination, the court in *Caplan* determined that the administrator of the plan had abused his discretion, and ordered that the plaintiff receive some of the requested disability benefits.[29]

The Tenth Circuit contrasted *Caplan* to *Rizzi*, saying "we cannot presume bias on the part of UDC based upon facts presented to another court more than two years ago . . . . Rizzi identifies no admissible evidence of a significant financial incentive by [reviewers] to decide claims in Hartford's favor."[30] The court also expressed concern that Rizzi had not presented any evidence "of an inherent bias or unreasonableness" by any of the doctors who reviewed her case.[31] With statements such as these, the case suggests that if Rizzi had conducted discovery and introduced her own evidence of bias, as Caplan had, the court may have been more sympathetic to her arguments.

*Caplan* predated *Glenn*'s clarification of the role conflicts of interest play in the review of ERISA decisions; after *Glenn* was decided courts became even more willing to allow

---

[27] *Id.* at *9 (citing *Caplan* at 989–90) (internal citations omitted).

[28] *Caplan* at 991. The nature of the relationship between Hartford and UDC presents the opportunity for unilateral unfairness, reminiscent of arbitration rules discussed in *Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999).

[29] *Id.* at 993.

[30] *Rizzi* at *9.

[31] *Id.*

5

discovery.[32] The District of Colorado, commenting at length on *Glenn* and the limited Tenth Circuit precedent, overturned a magistrate judge's decision to deny discovery on a possible conflict of interest.[33] In a later case, that same court allowed extensive discovery on a potential conflict of interest between Hartford and its third party independent medical reviewers, such as UDC, including broad statistical information on the number of reviews performed by third party reviewers, the claims' outcomes, and the compensation and instruction these reviewers received.[34]

## ORDER

In light of the specific case law regarding discovery – and the need for making a record – on the subject of Hartford and UDC's relationship and practice, the limited discovery proposed by Benson[35] is appropriate.

Dated this 21st day of July, 2010.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[32] *See Hogan-Cross v. Metropolitan Life Ins.*, 568 F.Supp.2d 410, 415 (S.D.N.Y. 2008).

[33] *Kohut v. Hartford Life and Accident Ins.*, 2008 WL 5246163 *10–13 (D. Colo 2008).

[34] *Almeida v. Hartford Life and Accident Ins.*, 2010 WL 743520 *2 (D. Colo. 2010).

[35] As attached in Ex. A to Supporting Memorandum.