# EXHIBIT "D"

James L. Barnett, #7462
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah  84101
Telephone:  (801) 799-5826
Fax:  (801) 799-5700
jbarnett@hollandhart.com

Jack M. Englert, Jr.
HOLLAND & HART LLP
6380 S. Fiddler's Green Circle, Suite 500
Greenwood Village, CO  80111
Telephone:  (303) 290-1087
Fax:  (303) 290-1606
jenglert@hollandhart.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL T. BENSON, - <br><br> Plaintiff, <br><br> vs. <br><br> HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Defendants. | **HARTFORD'S RESPONSES TO BENSON'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AS AMENDED BY THE COURT'S ORDER [DOC. 42]** <br><br> 2:10-cv-00275-TS <br><br> Judge Ted Stewart <br><br> Magistrate Judge David Nuffer |

Pursuant to Fed. R. Civ. P. 26(b), 33, and 34 and the Court's order [Doc. 42],

defendant Hartford Life and Accident Insurance Company ("Hartford") responds to the

interrogatories and requests for production of documents of plaintiff Michael T. Benson ("Benson").

GENERAL OBJECTIONS TO ALL OF BENSON'S DISCOVERY REQUESTS.

1.      Hartford objects to these interrogatories and requests for production to the extent they seek information that is equally available to Benson or call for factual contentions known or asserted by Benson on the grounds that such information is equally available to Benson.

2.      Hartford objects to all instructions, definitions, interrogatories, and requests for production to the extent they seek information not known or reasonably accessible to Hartford on the grounds that such instructions, definitions, interrogatories, and requests for production seek to require more from Hartford that any obligation imposed by law or the Federal Rules of Civil Procedure, seek to impose on Hartford an obligation to investigate or discover information equally accessible to Benson, and would subject Hartford to unreasonable and undue oppression.

3.      Hartford objects to each interrogatory and request for production to the extent it would require Hartford to warrant that the information provided is exhaustive. Hartford will endeavor to provide information in good faith consistent with its obligations under the Federal Rules of Civil Procedure.  Hartford reserves the right to supplement its answers, if it discovers additional responsive information in the future.

4.      Hartford objects to each interrogatory and request for production to the extent it seeks information of a confidential business or proprietary nature.  Hartford

will produce such information only pursuant to a agreed Protective Order that the Court enters.

    5.      Hartford objects to each interrogatory and request for production to the extent it seeks information from Hartford unrelated to the claims that Benson alleged in this lawsuit. Any such request for information unrelated to Benson's claims is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

    6.      Hartford objects to each interrogatory and request for production to the extent it seeks information concerning persons or entities other than Benson on the grounds that the disclosure of such information may violate rights of privacy and other judicially recognized protections and privileges, confidentiality agreements, or arrangements between Hartford and these other persons or entities, or court orders restricting dissemination of information.

    7.      Hartford objects to each interrogatory and request for production to the extent it seeks information that constitutes inadmissible extra-record evidence in this case under the Employee Retirement Income Security Act. Hartford reserves the right to object to the admission of any of the information provided in response to these discovery requests on the grounds that it is inadmissible under the precedent of the Tenth Circuit and this Court.

OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**Interrogatory No. 1.**

Identify each person making and assisting you with your Interrogatory responses, including each person's name, age, address, occupation, current title and relationship to Hartford or related entity.

**Response to Interrogatory No. 1.**

Hartford objects to this interrogatory on the grounds that it seeks private, confidential employment information about individuals, and violates Conn. Gen. Stat. § 31-128f, which prohibits the disclosure of personnel files and applies to Hartford, a Connecticut company. Subject to and without waiving the preceding objections, Hartford states that Giuseppina "Pina" Gulino, Appeals Specialist, Hartford Life and Accident Insurance Company, 200 Hopmeadow Street, Simsbury, Connecticut 06089, and Anthony McGovern, Director of Claim Strategy & Services, Hartford Life and Accident Insurance Company, 200 Hopmeadow Street, Simsbury, Connecticut 06089, prepared these discovery responses with the assistance of counsel. All communications with Ms. Gulino and Mr. McGovern should be directed to Hartford's counsel.

**Interrogatory No. 2.**

Identify the specific person, or if a committee, the names and committee members, who was or were responsible for the decision to deny benefits to the Plaintiff under the Plan in this case at each level at which the case was considered or appealed, and for each person, provide the persons' title, length of employment with Hartford or any of its related entities, and professional qualifications..

**Response to Interrogatory No. 2.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad,

(b) is unduly burdensome, (c) seeks private, confidential employment information about

individuals, and (d) violates Conn. Gen, Stat. § 31-128f, which prohibits the disclosure

of personnel files and applies to Hartford, a Connecticut company, (e) seeks information

that is equally available to Benson through the review of the claim file (Benson Rec. 1-

173), which Hartford produced to Benson on June 15, 2010 and incorporates by

reference. Subject to and without waiving the preceding objections, Hartford states that

the following Hartford employees were responsible for the claim and appeal

determinations at issue:

Jaclyn Nemcik, Short Term Disability Claim Analyst, Hartford Life and Accident

Insurance Company, 200 Hopmeadow, Simsbury, Connecticut 06089, made the

determination to end the waiver of premium at issue in this case. *See* Benson Rec. 113-

15. Ms. Nemcik has been employed with Hartford since 2004. Ms. Nemcik has

extensive experience working in Life and Disability Claims, including waiver of

premium claims. Ms. Nemcik has received on the job training regarding ERISA and

non-ERISA requirements, and received periodic updates regarding any changes.

Hartford states that Ms. Nemcik's compensation in 2009, the year of the claim

determination at issue, was $ 46,651.89 with a bonus of $ $ 5,470.79. All

communications with Ms. Nemcik should be directed to Hartford's counsel.

Giuseppina "Pina" Gulino, Appeals Specialist, Hartford Life and Accident

Insurance Company, 200 Hopmeadow, Simsbury, Connecticut 06089, made the appeal

determination regarding the waiver of premium claim at issue in this case. *See* Benson Rec. 54-58. Ms. Gulino has been employed with Hartford since 1999. Ms. Gulino has extensive experience in both Life and Disability Claims. Ms. Gulino started as a Long Term Disability Specialist, worked her way up to the highest level of Examiner and then became a Mentor for other Examiners. Upon being promoted to an Appeals Specialist in 2004, she, like others selected for the position, received training regarding ERISA and non-ERISA requirements for claims and appeals, and received periodic updates regarding any changes. Hartford states that Ms. Gulino's compensation in 2009, the year of the appeal determination at issue, was $ 58,600 with a bonus of $ 4,500. All communications with Ms. Gulino should be directed to Hartford's counsel.

Hartford states that during the annual reviews of its employees, Hartford evaluates its claims personnel based on the quality, accuracy, and timeliness of their claims investigations and decisions, *i.e.*, whether the claims were investigated and decided in accordance with the applicable plan documents. The subject of claims approved versus claims denied is never raised during annual reviews, and does not affect, nor is it considered in, claims personnel reviews or compensation decisions. Hartford does not establish numerical quotas requiring a certain number of claim approvals or denials, and does not evaluate its employees on the number of claims approved or denied. Hartford compensates members of the claims department and appeals unit in accordance with the terms of their individual employment with Hartford. Claim personnel do not receive benefits, bonuses, commissions, promotions, or any other incentives, financial or otherwise, based on the number of claims that they approve

-6-

or deny.  Rather, the compensation and performance bonuses provided to Hartford's claims decision-makers are wholly unrelated to the number of claims paid or claims denied.

Each claim is evaluated based upon the particular policy provisions and information before the administrator, with due regard for its fiduciary obligations.  It is a violation of Hartford's policies and procedures for its decision-makers to consider any interest of Hartford when making claim decisions.  Hartford's claims personnel do not have access to or knowledge of financial information regarding a policyholder, nor is information regarding the profitability or other financial information of a policyholder provided or accessible to them.  Hartford has effectively "walled off" claims personnel from the company's finance department by ensuring that an examiner's compensation is not determined by reference to his or her record in denying claims.  The claims personnel are separate from and are not involved with those persons responsible for Hartford's financial operations and decisions.  Claims investigations and decisions are made separately from, and without consideration of, the financial affairs of Hartford.

Hartford's claims personnel do not have any role or responsibility for management, reporting, or other functions regarding Hartford's finances.  The office of the Chief Financial Officer of Hartford and its affiliate, subsidiary, or parent companies does not have any involvement and does not participate in claims decisions on waiver of premium benefits at any level.

In part to assess independently the accuracy of claim decisions, Hartford has in place a Quality Assurance program.  Hartford also has a check against the arbitrary

-7-

denial of claims and sought to promote accuracy by maintaining a separate appeals unit for the independent consideration of denied claims.  Members of the appeals unit are charged with making independent assessments of the underlying claim decision based on all of the evidence in the claim file.  When a claim denial is appealed, the entire claim file, including the appeal investigation and the decision on which the appeal is based, is assigned to an Appeal Specialist in the appeals unit who had no involvement in the initial investigation and claim determination.  The Appeals Specialist investigating and deciding the appeal has the sole authority to make the appeal decision.  Hartford complies with all applicable ERISA regulations in its review of a claim and appeal.

In evaluating claims for waiver of premium benefits under employee benefits plans insured by Hartford, it is Hartford's practice and intention to review each claim fairly, without regard to the manner in which the plan is funded, and to award consistently waiver of premium benefits pursuant to the provisions of the applicable benefit plan while consistently denying waiver of premium benefits that are not entitled to approval.  Hartford recognizes that awarding waiver of premium benefits that are not entitled to such approval pursuant to the terms of the applicable plan does not benefit all of the persons insured under that plan as a group.

**Interrogatory No. 3.**

For each individual identified in response to Interrogatory No. 2, identify the rate of pay, bonuses paid, awards, or other indices of recognition for job performance for the entire time period since the person was first employed by Hartford or any of its related entities.

-8-

**Response to Interrogatory No. 3.**

Hartford incorporates by reference its preceding objections and response to Interrogatory No. 2.

**Interrogatory No. 4.**

Please state the names of each and every person who provided any medical analysis, evaluation, consultation, opinion, or advice at the behest of Hartford, related in any manner to the Plaintiff's claim in this case; and for each such individual, state their employer, job title, length of employment with Hartford or any of its related entities, and for the time period since the person was first employed, the rate of pay, bonuses paid, awards or other indices of recognition for job performance; if such a person was paid under any status other than that of an employee, please fully explain how such individual was paid.

**Response to Interrogatory No. 4.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad, (b) is unduly burdensome, and (c) seeks information that is equally available to Benson through the review of the claim file (Benson Rec. 1-173), which Hartford produced to Benson on June 15, 2010 and incorporates by reference. Subject to and without waiving the preceding objections, Hartford states that no Hartford employee "provided any medical analysis, evaluation, consultation, opinion, or advice." Hartford referred the file to University Disability Consultants ("UDC") in order to obtain independent medical reviews of the medical information in the administrative record. *See* Benson Rec. 77-78. UDC assigned the review of the file to Dr. Georgette Chekiri, who is Board

-9-

Certified in Family Medicine, and Dr. Maureen Smith Ruffell, who is Board Certified in

Psychiatry, and Dr. Chekiri and Dr. Ruffell prepared reports dated May 18, 2009. *See*

Benson Rec. 65-75. Hartford does not have any knowledge of the employment and/or

compensation arrangements between UDC and the independent physicians to whom it

assigns projects, including Dr. Chekiri and Dr. Ruffell.

**Interrogatory No. 5.**

Please state the source of funding for any benefits that would have been paid to

the Plaintiff had the Plaintiff been found eligible for benefits under the Plan, and if the

Plaintiff had been or is found to be entitled to benefits.

**Response to Interrogatory No. 5.**

Hartford Life and Accident Insurance Company.

**Interrogatory No. 6.**

Please describe with particularity the financial relationship between Hartford and

Zions with respect to the administration, interpretation and funding of the Plan,

including without limitation in your answer, any financial impact on Zions when

Hartford must pay claims under the Policy and/or when Hartford provides a waiver of

premium for life insurance benefits.

**Response to Interrogatory No. 6.**

Hartford objects to the use of the term "financial relationship" on the grounds

that it is (a) vague and (b) ambiguous. Subject to and without waiving the preceding

objections, Hartford states that there is no "financial relationship" between Hartford and

Zion Bancorporation ("Zion"). Beneficial Life issued a group policy funding life

-10-

insurance benefits to Zion. Hartford does not have any information regarding what, if any, "financial relationship" may or may not have existed between Beneficial Life and Zion. Hartford purchased a book of business from Beneficial Life that included Mrs. Benson's waiver of premium claim. At that point, Hartford became the claims administrator of Mrs. Benson's waiver of premium claim. Hartford has never received any payment from Zion relating to Mrs. Benson's waiver of premium claim or any other claim. Zion did not participate in any way in Hartford's review and determination of Mrs. Benson's waiver of premium claim. Hartford's approval of waiver of premium benefits, the payment of claims, and the decision to end a waiver of premium, as in the case of Mrs. Benson, does not have any financial impact on Zion.

**Interrogatory No. 7.**

Describe with particularity the policies and procedures in existence for Hartford at the time when it received the "block of waiver" identified at AR, p. "Benson Rec 000020."

**Response to Interrogatory No. 7.**

Hartford objects to this interrogatory on the grounds that it is (a) vague, (b) overly broad, (c) seeks confidential, proprietary information, and (d) seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence. Subject to and without waiving the preceding objections and subject to the terms of the protective order entered in this case, Hartford has produced with these discovery responses a copy of the section of the Life Product Manual relating to waiver of premium claims that was effective in May 2009, the month in which Hartford upheld the

-11-

decision to terminate the waiver of premium of Mrs. Benson. Hartford objects to the

production of any other section of the Life Product Manual, because the other sections

in the Life Product Manual are not applicable to waiver of premium claims. Therefore,

the other sections of the Life Product Manual are not relevant to the issues of this case

and the production of those irrelevant sections of the Life Product Manual would not be

reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 8.**

Identify and describe with particularity the meaning of, and policies and

procedures in existence for Hartford in connection with the terms "reduction diary,"

"term diary," and "Case Management Special Provisions" identified at AR p. "Benson

Rec. 000031."

**Response to Interrogatory No. 8.**

Hartford objects to this interrogatory on the grounds that it is (a) vague, (b)

overly broad, (c) seeks confidential, proprietary information, and (d) seeks information

that is irrelevant and not likely to lead to the discovery of admissible evidence. Subject

to and without waiving the preceding objections and subject to the terms of the

protective order entered in this case, Hartford states that the March 27, 2007 entry at

Benson Rec. 31 documents Hartford's entry of Mrs. Benson's existing waiver of

premium at the time of Hartford's purchase of the book of business that included Mrs.

Benson's waiver of premium. The entry quotes the applicable Case Management

Special Provisions section after "P:." *Id.* A Claim Analyst sets reduction diaries in

accordance with the applicable policy provision to remind the Claim Analyst of any

upcoming changes in the benefit amounts. Term diaries indentify the date on which a claim will close under the applicable policy provisions. These entries on Hartford's system are ministerial, and the entries do not relate in any way to an assessment of Mrs. Benson's continued eligibility to receive a waiver of premium. To the extent that this interrogatory seeks Hartford's guidelines relating to the assessment of a claimant's continued eligibility for a waiver of premium, Hartford incorporates by reference its objections and response to interrogatory no. 7.

**Interrogatory No. 9.**

Identify and describe the policies and procedures in existence for Hartford in connection with its "Zions claims" identified at AR p. "Benson Rec. 000133."

**Response to Interrogatory No. 9.**

The documents appearing in the administrative record at Benson Rec. 133-71 constitute the file of Beneficial Life regarding Mrs. Benson's waiver of premium claim. Hartford did not prepare these documents. Hartford does not have any information or knowledge about the "policies and procedures" of Beneficial relating to Zion. When Hartford replaced Beneficial Life as the insurer and the claims administrator of the group life insurance policy at issue, Hartford administered claims pursuant to the terms of the policy. To the extent that this interrogatory seeks Hartford's guidelines relating to the assessment of a claimant's continued eligibility for a waiver of premium, Hartford incorporates by reference its objections and response to interrogatory no. 7.

**Interrogatory No. 10.**

Identify and describe the nature of the "reserves" identified at AR p. "Benson Rec. 000149" including but not limited to the source of the reserves and the purpose of the reserves.

**Response to Interrogatory No. 10.**

The documents appearing in the administrative record at Benson Rec. 133-71 constitute the file of Beneficial Life regarding Mrs. Benson's waiver of premium claim. Hartford did not prepare these documents. Hartford does not have any information or knowledge about the "reserves" of Beneficial Life.

**Interrogatory No. 11.**

State the amount in dollars of the reserve assigned to Kristy's life and disability claims, the names and titles of the individuals involved in setting the reserve amounts, each individual's actions or responsibilities in setting the reserves and identify all criteria or guidelines under by Hartford in determining the reserve amounts.

**Response to Interrogatory No. 11.**

Beneficial Life set a reserve in the amount of $53,242 for Mrs. Benson's waiver of premium claim before Hartford acquired that file. Hartford did not set that reserve amount, and does not know how Beneficial Life arrived at that amount. Hartford also states that its Claim Analysts and Appeals Specialist do not set reserves for claims, and are insulated from all such financial information. The determination of a claim has no relationship to a reserve amount. Hartford's personnel who do have access to financial

information, such as reserves, have no involvement in the determination of claims or appeals.

**Interrogatory No. 12.**

Identify the number of medical reviews performed by University Disability Consortium ("UDC") physicians or psychologists at the request of HARTFORD for each of the years 2005 through the present.

**Response to Interrogatory No. 12.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period," (b) is overly broad in that it seeks information relating to third party claims, (c) seeks information unrelated to Hartford's dual role conflict of interest, (d) seeks information that is not properly discoverable given the needs and the issues of this ERISA case under Fed. R. Civ. P. 26(b), and (e) is not reasonably calculated to lead to the discovery of admissible evidence.  In further support of these objections, Hartford states that the inquiry relevant to the evaluation of Hartford's dual role conflict of interest is whether Hartford's dual role affected in any way its claim and appeal determinations at issue in this case.  The dual role conflict of interest inquiry does not concern or involve third parties, who did not make the claim and appeal determinations, such as UDC.  UDC is an independent third party vendor that assigns claim files to independent physicians for review.  UDC did not make the claim or appeal determinations at issue.  Hartford was the sole decisionmaker regarding Mrs. Benson's waiver of premium benefits claim, and based its claim and appeal determinations on all of the evidence before it in the administrative record, including,

-15-

but not limited to, the reports of the independent physicians to whom UDC assigned the file for review.

Subject to and without waiving the preceding objections, Hartford provides the following response:

2005: 2,525 reviews performed by UDC.

2006: 1,775 reviews performed by UDC.

2007: 896 reviews performed by UDC.

2008: 847 reviews performed by UDC.

2009: 967 reviews performed by UDC.

2010: 769 reviews performed by UDC..

Information for 2011 is neither available at this time nor relevant in any way to the issues of this case.

**Interrogatory No. 13.**

Of the reviews performed by UDC physicians or psychologists at the request of HARTFORD describe how many reviews have resulted in a finding of "not disabled" or a denial of benefits.

**Response to Interrogatory No. 13.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period" as defined in the interrogatories, (b) is overly broad in that it seeks information relating to third party claims, (c) unduly burdensome, (d) seeks information unrelated to Hartford's dual role conflict of interest, (e) seeks information that is not properly discoverable given the needs and the issues of this

ERISA case under Fed. R. Civ. P. 26(b), and (f) is not reasonably calculated to lead to

the discovery of admissible evidence. In further support of these objections, Hartford

states that the inquiry relevant to the evaluation of Hartford's dual role conflict of

interest is whether Hartford's dual role affected in any way its claim and appeal

determinations at issue in this case. The dual role conflict of interest inquiry does not

concern or involve third parties, who did not make the claim and appeal determinations,

such as UDC. UDC is an independent third party vendor that assigns claim files to

independent physicians for review. UDC did not make the claim or appeal

determinations at issue. Hartford was the sole decisionmaker regarding Mrs. Benson's

waiver of premium benefits claim, and based its claim and appeal determinations on all

of the evidence before it in the administrative record, including, but not limited to, the

reports of the independent physicians to whom UDC assigned the file for review.

Hartford states that reports submitted by UDC do not contain conclusions as to

whether an individual meets the definition of disability under the applicable policy and,

therefore, whether a report is favorable or unfavorable is a highly subjective

determination that would require a review of the claims history to determine what the

claimant was seeking. In addition, many reports likely comment on more than one

illness or malady, and may, therefore, fall into both categories. An accurate answer to

this interrogatory is, therefore, not possible. To form even a subjective speculation

would require persons to review manually each of the 7,010 claim files that contain a

review performed by UDC between 2005 and 2009 to determine the result. Claim files

contain hundreds and sometimes thousands of pages of material. Assuming it takes an

-17-

extra 2 hours to determine what impact a Medical Consultant's report had on a claim and the labor charge associated with reviewing a claim file is $20 per hour, it would cost approximately $140,200 to answer this single interrogatory in straight labor costs alone. This does not include copying expenses, the expense of preparing files for review, setting up computers, and so forth. Given the amount in controversy in this case ($108,000), this expense would be unreasonable. Accordingly, the preparation of a response to this interrogatory would be unduly burdensome and the expense of responding far would outweigh any relevance, if any, the information would yield.

**Interrogatory No. 14.**

Describe the average fee earned by UDC and/or its individual reviewing physicians or psychologists for a medical review completed for Hartford.

**Response to Interrogatory No. 14.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period" as defined in the interrogatories, (b) is overly broad in that it seeks information relating to third party claims, (c) unduly burdensome, (d) seeks information unrelated to Hartford's dual role conflict of interest, (e) seeks information that is not properly discoverable given the needs and the issues of this ERISA case under Fed. R. Civ. P. 26(b), and (f) is not reasonably calculated to lead to the discovery of admissible evidence. In further support of these objections, Hartford states that this information is readily available to Benson based on the information provided in these discovery responses. Hartford incorporates by reference its objections and responses to interrogatories nos. 12, 13, and 14.

-18-

**Interrogatory No. 15.**

For each year from 2005 to the present, provide the total gross monetary compensation paid to UDC and/or its individual physicians or psychologists by Hartford.

**Response to Interrogatory No. 15.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period" as defined in the interrogatories, (b) is overly broad in that it seeks information relating to third party claims, (c) unduly burdensome, (d) seeks information unrelated to Hartford's dual role conflict of interest, (e) seeks information that is not properly discoverable given the needs and the issues of this ERISA case under Fed. R. Civ. P. 26(b), and (f) is not reasonably calculated to lead to the discovery of admissible evidence. In further support of these objections, Hartford states that the inquiry relevant to the evaluation of Hartford's dual role conflict of interest is whether Hartford's dual role affected in any way its claim and appeal determinations at issue in this case. The dual role conflict of interest inquiry does not concern or involve third parties, who did not make the claim and appeal determinations, such as UDC. UDC is an independent third party vendor that assigns claim files to independent physicians for review. UDC did not make the claim or appeal determinations at issue. Hartford was the sole decisionmaker regarding Mrs. Benson's waiver of premium benefits claim, and based its claim and appeal determinations on all of the evidence before it in the administrative record, including, but not limited to, the reports of the independent physicians to whom UDC assigned the file for review.

With respect to the payments made to UDC, Hartford states:

2005: $ 3,558,187.50.

2006: $ 2,516,256.25.

2007: $ 1,272,127.50.

2008: $ 1,235,995.00.

2009: $ 1,476,633.75.

2010: $ 1,231,756.25.

Information for 2011 is neither available at this time nor relevant in any way to the issues of this case.

With respect to "the total gross monetary compensation paid to …[UDC's] individual physicians or psychologists," Hartford does not make any payments directly to the physicians and other health professionals to whom UDC assigns projects. Hartford does not have any information or knowledge about the payments that UDC makes to the physicians and other health professionals to whom it assigns projects.

**Interrogatory No. 16.**

For each of the years from 2005 to the present, provide the total number of reviews performed per year and the gross compensation paid to Dr. Georgette Chekiri by Hartford for those reviews.

**Response to Interrogatory No. 16.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period" as defined in the interrogatories, (b) is overly broad in that it seeks information relating to third party claims, (c) unduly burdensome,

-20-

(d) seeks information unrelated to Hartford's dual role conflict of interest, (e) seeks information that is not properly discoverable given the needs and the issues of this ERISA case under Fed. R. Civ. P. 26(b), and (f) is not reasonably calculated to lead to the discovery of admissible evidence. In further support of these objections, Hartford states that the inquiry relevant to the evaluation of Hartford's dual role conflict of interest is whether Hartford's dual role affected in any way its claim and appeal determinations at issue in this case. The dual role conflict of interest inquiry does not concern or involve third parties, who did not make the claim and appeal determinations, such as UDC. UDC is an independent third party vendor that assigns claim files to independent physicians for review. UDC did not make the claim or appeal determinations at issue. Hartford was the sole decisionmaker regarding Mrs. Benson's waiver of premium benefits claim, and based its claim and appeal determinations on all of the evidence before it in the administrative record, including, but not limited to, the reports of the independent physicians to whom UDC assigned the file for review. Further, Hartford states that it does not pay compensation directly to any doctor. Instead, Hartford pays UDC for its services in connection with physician reviews. Hartford has no knowledge about the compensation that UDC pays to Dr. Chekiri.

Subject to and without waiving the preceding objections, Hartford provides the following response:

2005: 64 reviews.

2006: 57 reviews.

2007: 35 reviews.

2008: 49 reviews.

2009: 66 reviews.

2010: 64 reviews.

**Interrogatory No. 17.**

For each of the years from 2005 to the present, provide the total number of reviews performed per year and the gross compensation paid to Dr. Maureen Smith Ruffell by Hartford for those reviews.

**Response to Interrogatory No. 16.**

Hartford objects to this interrogatory on the grounds that it (a) is overly broad with respect to the "relevant time period" as defined in the interrogatories, (b) is overly broad in that it seeks information relating to third party claims, (c) unduly burdensome, (d) seeks information unrelated to Hartford's dual role conflict of interest, (e) seeks information that is not properly discoverable given the needs and the issues of this ERISA case under Fed. R. Civ. P. 26(b), and (f) is not reasonably calculated to lead to the discovery of admissible evidence. In further support of these objections, Hartford states that the inquiry relevant to the evaluation of Hartford's dual role conflict of interest is whether Hartford's dual role affected in any way its claim and appeal determinations at issue in this case. The dual role conflict of interest inquiry does not concern or involve third parties, who did not make the claim and appeal determinations, such as UDC. UDC is an independent third party vendor that assigns claim files to independent physicians for review. UDC did not make the claim or appeal determinations at issue. Hartford was the sole decisionmaker regarding Mrs. Benson's

waiver of premium benefits claim, and based its claim and appeal determinations on all of the evidence before it in the administrative record, including, but not limited to, the reports of the independent physicians to whom UDC assigned the file for review. Further, Hartford states that it does not pay compensation directly to any doctor. Instead, Hartford pays UDC for its services in connection with physician reviews. Hartford has no knowledge about the compensation that UDC pays to Dr. Ruffell.

Subject to and without waiving the preceding objections, Hartford provides the following response:

2005:  64 reviews.

2006:  44 reviews.

2007:  25 reviews.

2008:  36 reviews.

2009:  58 reviews.

2010:  38 reviews.

**Interrogatory No. 18.—Stricken by the Court [Doc. 42].**

**Interrogatory No. 19—As Revised by the Court [Doc. 42].**

Please identify any and all internal guidelines, policies, procedures, claims handling manuals and memorandum in existence during the time frame at issue in this case concerning the interpretation and/or administration of a claim for waiver of premium benefits on a life insurance policy, including (without limitation) a waiver which is contingent on a claimant being disabled, where the claimant is also receiving long term disability benefits under a group disability insurance policy.

-23-

**Response to Interrogatory No. 19.**

Hartford objects to this interrogatory on the grounds that it is (a) vague, (b) overly broad, (c) seeks confidential, proprietary information, and (d) seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence. In further support of these objections, Hartford states that Benson appears to have based this interrogatory on an incorrect assumption that some sort of link exists between the determination of a waiver of premium under a group life insurance policy and a claimant's receipt of "long term disability benefits under a group disability insurance policy." These determinations are distinct. The determination of a claim for waiver of premium depends on the specific terms of the group life insurance policy relating to waiver of premium, and is not connected in any way to whether or not a claimant is eligible to receive long term disability benefits. The definition of disability under a group life insurance policy for the purposes of a waiver of premium is separate from the definition of disability for the purposes of long term disability under a group disability plan. Moreover, in this case, Hartford neither administers nor insures Zion's group long term disability plan, and has no knowledge about the terms of Zion's long term disability plan or Unum Life Insurance Company's administration of that plan. Depending on the respective terms of a group life insurance plan and a group long term disability plan, a claimant may not qualify for a waiver of premium even if the same claimant has been approved for long term disability benefits, as appears to have occurred with respect to Mrs. Benson's claim.

Subject to and without waiving the preceding objections and subject to the terms of the protective order entered in this case, Hartford has produced with these discovery responses a copy of the section of the Life Product Manual relating to waiver of premium claims that was effective in May 2009, the month in which Hartford upheld the decision to terminate the waiver of premium. Hartford objects to the production of any other section of the Life Product Manual, because the other sections in the Life Product Manual are not applicable to waiver of premium claims. Therefore, the other sections of the Life Product Manual are not relevant to the issues of this case and the production of those irrelevant sections of the Life Product Manual would not be reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 20.—Stricken by the Court [Doc. 42].**

### OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION
**Request No. 1.**

Produce each and every document identified or relied on in preparing your responses to the Interrogatories above.

**Response to Request No. 1.**

Hartford refers Benson to the copy of the claim file (Benson Rec. 1-173), which Hartford produced to Benson on June 15, 2010, and the documents in the claim file that Hartford cited in its responses to the interrogatories. Hartford also refers Benson to the section of the Life Product Manual, which Hartford has produced with these discovery responses, and incorporates by reference its objections and responses to interrogatories nos. 7, 8, 9, and 19.

**Request No. 2.**

Produce each and every document in connection with the transfer of Zions'
employees benefits from UNUM to Hartford for long term disability benefits or from
Beneficial to Hartford for life insurance benefits including, but not limited to, contracts,
insurance policies, plan documents, administrative agreements, payments of premium,
and payments of funds for "reserves" or other purposes.

**Response to Request No. 2.**

Hartford objects to this request for production on the grounds that it is (a) vague,
(b) overly broad, (c) seeks confidential, proprietary information, and (d) seeks
information that is irrelevant and not likely to lead to the discovery of admissible
evidence. In further support of these objections, Hartford states that its acquisition of
the claims relating to the Zion group life insurance policy was a business transaction.
None of the details regarding this transaction have any relevance to Hartford's
administration of Mrs. Benson's waiver of premium claim in accordance with the terms
of the Policy. The business transaction agreement between Beneficial Life and Hartford
did not affect in any way Hartford's administration of the claims that Hartford acquired
from Beneficial Life. Ms. Nemcik and Ms. Gulino neither had access to nor used in any
way materials relating to the business transaction between Hartford and Beneficial Life
in making their determinations relating to Mrs. Benson's waiver of premium claim.
Moreover, there is no connection in time between Hartford's acquisition of Mrs.
Benson's claim from Beneficial Life in 2007 and Hartford's decision to end Mrs.
Benson's waiver of premium in 2009. Moreover, as previously noted, Hartford neither

administers nor insures Zion's group long term disability plan, and has no knowledge about the terms of Zion's long term disability plan or Unum Life Insurance Company's administration of that plan.

**Request No. 3.—As Revised by the Court [Doc. 42].**

Produce any and all documents outlining the duties and responsibilities of Hartford and the plan administrator/employer in connection with administration of the Plan, which affect waiver of premium, processing claims for waiver of premium benefits under the Plan, considering appeals of denials of waiver of premium benefits under the Plan and which identify the individual(s) or entities with discretion to determine eligibility for waiver of premium benefits under the Plan.

**Response to Request No. 3.**

No documents exist regarding "the duties and responsibilities of Hartford and the plan administrator/employer in connection with administration of the Plan," because Zion has absolutely no involvement in the administration of waiver of premium claims.

With respect to "the duties and responsibilities" of Hartford, Hartford refers Benson to the section of the Life Product Manual, which Hartford has produced with these discovery responses, and incorporates by reference its objections and responses to interrogatories nos. 7, 8, 9, and 19. Hartford also refers Benson to the Policy, which appears in the administrative record at Benson Rec. 1-17.

**Request No. 4.**

Produce any and all documents in whatever form, relating to the "reduction diary," the "term diary," and "Case Management Special Provisions" referenced in Kristy's file materials.

**Response to Request No. 4.**

Hartford incorporates by reference its objections and response to interrogatory no. 8.

**Request No. 5.**

Produce any and all medical opinions, reports, memoranda, emails, correspondence and/or any other documents reflecting a review of Plaintiff's claim by a person or persons with medical expertise, including each individual reviewer's credentials and *curriculum vitae*, in connection with the denials of coverage during the appeal process for Plaintiff's claim.

**Response to Request No. 5.**

Hartford objects to this request for production on the grounds that it seeks information that is equally available to Benson through the review of the claim file (Benson Rec. 1-173), which Hartford produced to Austin on July 15, 2010.  Subject to and without waiving this objection, Hartford refers Benson to Benson Rec. 23-24 (May 19, 2009 entry); 25 (May 7, 2009 entry); 37-48, 61-62; 65-79; 82; 86.  Hartford also has produced with these discovery responses copies of the Curricula Vitae of Dr. Chekiri and Dr. Ruffell.

**Request No. 6.—Stricken by the Court [Doc. 42].**

**Request No. 7.—Stricken by the Court [Doc. 42].**

**Request No. 8.**

Produce the following documents pertaining to Hartford's relationship with UDC from 2005 to the present:

> a.  IRS 1099 form(s) regarding compensation paid by Hartford to UDC and/or its individual reviewers;
>
> b.  Instructions provided by Hartford or UDC to Dr. Georgette Chekiri or Dr. Maureen Smith Ruffell concerning writing reports concerning insurance claimants;
>
> c.  Correspondence between Hartford and UDC and/or its individual reviewing physicians concerning Plaintiff's claim.

**Response to Request No. 8.**

Hartford objects to this request for production on the grounds that it seeks information that is equally available to Benson through the review of the claim file (Benson Rec. 1-173), which Hartford produced to Benson on June 15, 2010. Subject to and without waiving this objection, Hartford states as follows:

With respect to request for production no. 8(a), Hartford incorporates by reference its responses to interrogatories nos. 12 and 14, which provides the information that would be found in 1099 forms relating to payments to UDC. The 1099 forms are not readily available, and Hartford objects to the production of those documents as needlessly duplicative of the information provided in response to interrogatory nos. 12

and 14. No documents exist relating to payments to individual reviewers, because Hartford does not make any payments to the reviewing physicians to whom UDC assigns projects. Hartford does not have any information or knowledge about the payments that UDC makes to the physicians and other health professionals to whom it assigns projects.

With respect to request for production no. 8(b), Hartford refers Benson to Benson Rec. 77-78 regarding communications between Hartford and UDC concerning Mrs. Benson's claim, which is Hartford's referral of Mrs. Benson's file to UDC for review. No other responsive document exists. Hartford did not have any communications directly with Dr. Chekiri or Dr. Ruffell, and, therefore, no responsive document exists with respect to those independent physicians.

With respect to request for production no. 8(c), Hartford refers Benson to Benson Rec. 38; 76; and 77-78 regarding communications between Hartford and UDC about Mrs. Benson's claim. *See also* Benson Rec. 39-48; 65-75 (copies of the reports of Dr. Chekiri and Dr. Ruffell, which UDC forwarded to Hartford). No other responsive document exists. Hartford did not have any communications directly with Dr. Chekiri or Dr. Ruffell, and, therefore, no responsive document exists with respect to those independent physicians.

### Verification

I, Giuseppina "Pina" Gulino, am an Appeals Specialist for Hartford Life and Accident Insurance Company ("Hartford") and am authorized to make this verification on its behalf. I have read the interrogatories propounded to Hartford by plaintiff Michael T. Benson, and Hartford's responses to those interrogatories. I am familiar with the contents of both. The factual averments in the foregoing responses to interrogatories numbered 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 19 and request for production numbered 1, 2, 3 and 4 are true and correct to the best of my knowledge, information, and belief, and based on my review of available documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Giuseppina "Pina" Gulino_

Giuseppina "Pina" Gulino

3711009_1

### VERIFICATION

I, Anthony McGovern, am the Director of Claim Strategy & Services with Hartford Life and Accident Insurance Company ("Hartford") and am authorized to make this verification on its behalf. I have read the interrogatories propounded to Hartford by plaintiff Michael T. Benson, and Hartford's responses to those interrogatories. I am familiar with the contents of both. The factual averments in the foregoing responses to interrogatories numbered 4, 12, 13, 14, 15, 16, 17 and request for production numbered 5 and 8 are true and correct to the best of my knowledge, information, and belief, and based on my review of available documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Anthony McGovern

3711030_1

**AS TO OBJECTIONS:**

Dated this 11th day of March, 2011.

> HOLLAND & HART LLP
>
> Jack M. Englert, Jr.
> James L. Barnett
>
> ATTORNEYS FOR DEFENDANT HARTFORD LIFE
> AND ACCIDENT INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2011, I served a copy of the foregoing document to the following by:

☐     U.S. Mail, postage prepaid
☐     Hand Delivery
☐     Overnight Delivery via UPS
☒     Electronic Service to the e-mail address listed

Brian S. King, Esq.
336 South 300 East
Suite 200
Salt Lake City, UT 84111
brian@briansking.com

*Connie A. Scribner*

Connie Scribner

5031346_1.DOC

-33-