IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL T. BENSON,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>Defendant. | MEMORANDUM DECISION AND<br>ORDER ON CROSS MOTIONS FOR<br>SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:10-CV-275 TS |

This matter is before the Court on the parties' cross motions for summary judgment.

Plaintiff brings this action under the Employee Retirement Income Security Act ("ERISA").[1]

Plaintiff challenges Defendant's decision to terminate Janice K. Benson's Waiver of Premium

benefit.  For the reasons discussed below, the Court will grant Defendant's Motion for Summary

Judgment and deny Plaintiff's Motion for Summary Judgment.

---

[1] 29 U.S.C. §§ 1001 *et seq.*

## I.  BACKGROUND

Plaintiff Michael T. Benson is the named beneficiary of a group life insurance policy provided to his late wife, Janice K. Benson ("Ms. Benson"), by her employer, Zions Bancorporation ("Zions").  Ms. Benson was an active employee of Zions from 1990 to December 1998.  Ms. Benson became disabled in 1998 and she qualified for disability benefits under a group plan sponsored by Zions and insured by UNUM Insurance Company.

At the time she became disabled, Ms. Benson's group life insurance benefits were insured by Beneficial Life Insurance Company ("Beneficial").  The Group Life Insurance Policy (the "Policy") provided for a Waiver of Premium benefit if the claimant is "totally disabled."  So long as the claimant continued to meet the definition of total disability in the Policy, his or her life insurance coverage would continue at no cost.  It was determined that Ms. Benson qualified for the Waiver of Premium benefit and each year after she first qualified, Beneficial sent forms to her and her treating physicians to update information on her condition.

In 2007, Defendant Hartford Life and Accident Insurance Company ("Hartford" or "Defendant") acquired certain life insurance policies from Beneficial, including Ms. Benson's policy.  Hartford became the claims administrator responsible for determining claims under the Group Life Insurance Policy.

On October 30, 2008, Hartford contacted Ms. Benson and informed her that in order to continue the Waiver of Premium benefit, she would have to provide information to demonstrate that she continued to be totally disabled under the terms of the Policy.  Ms. Benson provided certain documentation to Hartford in response to its inquiry.

2

Specifically, Ms. Benson provided an "Attending Physician's Statement of Functionality" completed by her treating physician, Dr. Abdulla, on December 10, 2008.[2]  Dr. Abdulla noted that he first began seeing Ms. Benson in September 2008, and that she had chronic obstructive pulmonary disease ("COPD") and had undergone a lobectomy, a surgical removal of a portion of the lung.  Dr. Abdulla also noted that Ms. Benson had shortness of breath and wheezing.  Dr. Abdulla did not complete the portion of the form discussing functional capabilities.[3]

Ms. Benson also submitted a Personal Profile Evaluation.[4]  In that Evaluation, Ms. Benson stated that she was unable to work due to her chronic pain and related medication use, depression, and nerve damage.  Ms. Benson stated that she spent 12 to 15 hours per day in bed.

As part of its evaluation of Ms. Benson, Hartford sent a functional capacity letter, dated January 9, 2009, to Dr. Abdulla.  That letter asked Dr. Abdulla to answer the following question: "Do you feel that Janice Benson is currently mentally and physically capable of performing Part-time work that is: Chose One" followed by categories or work ranging from sedentary to very heavy.[5]  Dr. Abdulla checked the box marked "Medium," which indicated that he believed Ms. Benson was able to perform part-time work involving the exertion of "20 to 50 pounds of force

---

[2]Rec. at 129-30.

[3]*Id*. at 130.

[4]*Id*. at 125-28.

[5]*Id*. at 118.

occasionally and/or 10 to 25 pounds of force frequently and/or greater than negligible up to 10 pounds of force to move objects."[6]

On February 20, 2009, Hartford informed Ms. Benson that she no longer met the definition of disabled and, therefore, was no longer eligible for the Waiver of Premium benefit.[7] Hartford based its decision on the Attending Physician's Statement of Functionality completed by Dr. Abdulla on December 10, 2008; the functional capacity letter completed by Dr. Abdulla; and a telephone call with Ms. Benson on February 11, 2009.  In addition to terminating the Waiver of Premium benefit, Hartford informed Ms. Benson that she could convert the Group Life Insurance Policy to an Individual Insurance Policy at her own expense.[8]

On March 4, 2009, Ms. Benson spoke with a representative from Hartford.  Ms. Benson explained that she could not return to work and that her doctor had made an error.[9]  Ms. Benson was informed of her appeal rights and was told that she would need to appeal the decision.[10]  In addition, Ms. Benson was "advised she would need to convert her policy during the appeal process to keep her benefit."[11]

---

[6] *Id.*

[7] *Id.* at 113-15.

[8] *Id.* at 114.

[9] *Id.* at 26.

[10] *Id.*

[11] *Id.*

Ms. Benson appealed Hartford's decision to terminate her Waiver of Premium benefit.[12] As part of her appeal, Ms. Benson submitted a new Personal Profile Evaluation on March 31, 2009.[13]  In the Evaluation, Ms. Benson again stated that she could not work due to her chronic pain, medications, and depression.  Ms. Benson further stated that she stayed in bed 12 to 15 hours per day.

Dr. Abdulla also submitted an amended "Attending Physician's Statement of Functionality."[14]  On the functional capabilities portion of the form, Dr. Abdulla noted that the restrictions included on the form were not applicable as Ms. Benson was on disability and social security.

On April 30, 2009, Hartford sent Dr. Abdulla a letter requesting treatment notes and other information in relation to Ms. Benson's appeal.  In addition, the letter asked Dr. Abdulla the following: "Do you feel that Ms. Benson has been prevented from performing any work, including part-time sedentary level work, since February 6, 2009?  If yes, please advise us of any restrictions or limitations that have been placed on her activities that would preclude part-time sedentary level work."[15]  Dr. Abdulla responded, stating: "Yes; COPD; LUL lobectomy; chronic pain."[16]

---

[12]*Id*. at 103.

[13]*Id*. at 107-10.

[14]*Id*. at 104-05; *see also* Docket No. 51, Ex. A.

[15]Rec. at 96.

[16]*Id*. at 85.

On May 7, 2009, Hartford referred Ms. Benson's file to University Disability Consortium for an independent medical record review.[17]  Hartford also indicated to Ms. Benson that it was "requesting a telephonic consultation with Dr. Abdulla."[18]

University Disability Consortium assigned the review of Ms. Benson's file to Dr. Ruffell, a Board Certified Psychiatrist, and Dr. Chekiri, who is Board Certified in Family Medicine.

Dr. Ruffell completed a psychiatric review for Ms. Benson.[19]  Dr. Ruffell examined various medical records and also spoke with Ms. Benson's treating physician, Dr. Abdulla.  In speaking with Dr. Abdulla, he opined that Ms. Benson's mental/emotional diagnosis was "at worst, mild depression."[20]  When asked if Ms. Benson's symptoms were of such severity that they would interfere with her occupational capacity if she were motivated to function in a work setting, Dr. Abdulla stated "No."[21]  Dr. Abdulla further stated that he would not have any objection should Ms. Benson want to return to work despite all of her current mental/emotional problems.[22]  Based on her review of the records and her discussion with Dr. Abdulla, Dr. Ruffell found support for the finding that Ms. Benson had mild symptoms of depression and anxiety.  Dr. Ruffell further stated that "there is not support in the information available to me to conclude that

---

[17] *Id.* at 79.

[18] *Id.*

[19] *Id.* at 45-49.

[20] *Id.* at 47.

[21] *Id.*

[22] *Id.*

these symptoms are of such severity that they would be likely to impair [Ms. Benson's] occupational capacity were she motivated to function in the workplace despite them."[23]

Dr. Chekiri completed a medical record review of Ms. Benson.[24]  Dr. Chekiri reviewed Ms. Benson's medical records dating from January 2008 to March 2009.  In addition, Dr. Chekiri spoke with Dr. Abdulla who "opined that [Ms. Benson] could perform part-time sedentary work, but that 40-hour per week sedentary work would likely cause excessive exertion given her pulmonary status."[25]  Dr. Chekiri agreed that Ms. Benson would be restricted to part-time sedentary work because of the severity of her lung disease.[26]  Dr. Chekiri opined that Ms. Benson "should be able to perform part-time sedentary work," with certain restrictions.[27]

On May 19, 2009, Hartford informed Ms. Benson that it was denying her appeal and upholding the termination of Ms. Benson's Waiver of Premium benefit.[28]  In making this determination, Hartford reviewed: Ms. Benson's appeal letter, received on April 21, 2009; Dr. Abdulla's Attending Physician's Statement, dated April 16, 2009; Ms. Benson's Personal Profile Evaluation, completed on March 31, 2009; notes submitted by Dr. Abdulla on April 30, 2009;

---

[23]*Id.* at 48.

[24]*Id.* at 39-44.

[25]*Id.* at 41.

[26]*Id.* at 42.

[27]*Id.* at 43.

[28]*Id.* at 54-58.

progress notes submitted by Dr. Abdulla; and the reviews completed by University Disability

Consortium.[29]

From this evidence, Hartford determined that Ms. Benson was "not physically precluded

from performing at least a part-time sedentary level occupation, and . . . ha[d] no psychological

conditions that preclude[d her] from any work."[30]  As a result, Hartford determined that Ms.

Benson no longer met the Policy definition of "Totally Disabled" and was no longer entitled to

the Waiver of Premium benefit.[31]

Ms. Benson passed away on August 27, 2009.  On September 29, 2009, Hartford wrote to

Plaintiff in response to a claim he filed as the beneficiary of the life insurance benefit under the

Plan.[32]  Hartford explained that Ms. Benson's claim had been terminated.[33]

## II.  STANDARD OF REVIEW

The Court must first determine the appropriate standard of review in this matter.  Plaintiff

argues that the Court should apply a *de novo* review while Defendant argues that an arbitrary and

capricious standard should be used.

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

---

[29]*Id*. at 54.

[30]*Id*. at 58.

[31]*Id*.

[32]*Id*. at 38.  Plaintiff's claim is not included in the record.

[33]*Id*.

eligibility for benefits or to construe the terms of the plan."[34]  If, however, "the plan given an

administrator discretionary authority to determine eligibility for benefits or to construe its terms,

we employ a deferential standard of review, asking only whether the denial of benefits was

arbitrary and capricious."[35]

      In making this determination the Court must look to the language of the plan to determine

whether it gives the administrator discretionary authority.  In doing so, "it is essential to focus

precisely on what decision is at issue, because a plan may grant the administrator discretion to

make some decisions but not others."[36]  The Tenth Circuit has "been comparatively liberal in

construing language to trigger the more deferential standard of review under ERISA."[37]  The

court has stated that "the mere requirement to submit satisfactory or adequate proof of eligibility

does not confer discretion upon an administrator."[38]  "On the other hand, when . . . a plan states

that the grant or denial of a particular benefit is to be determined by proof satisfactory to the

administrator, courts have said that deferential review is proper."[39]

      In *Nance*, the Tenth Circuit "distinguished plan terms that require submission of

'satisfactory proof' from those that require submission of 'proof *satisfactory to [plan*

---

[34]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[35]*Holcomb v. UNUM Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009)
(quotation marks and citation omitted).

[36]*Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1266 (10th Cir. 2002).

[37]*Id*. at 1268.

[38]*Id*. at 1267.

[39]*Id*. at 1268.

*administrator* ].'"[40]  The court "held that language requiring proof 'satisfactory to [plan

administrator] suffices to convey discretion to a plan administrator.'  On the other hand,

requiring satisfactory proof alone, without specifying who must be satisfied, does not vest a plan

administrator with discretion."[41]

    The court in *Nance* found that plan language requiring that proof of disability be

satisfactory to the plan administrator was sufficient to convey discretion to the plan administrator

and, thus, warranted the more differential standard of review.[42]  Following *Nance*, this Court has

held that language requiring approval of the plan administrator was sufficient to confer

discretion.[43]

    The Group Life Insurance Policy provides that Defendant's role is to "administer

coverage and determine premiums payable under this policy."[44]  The Waiver of Premium

provision, the provision at issue in this matter, requires proof of total disability be "properly

submitted to *and approved by the Company*."[45]  The continuation of insurance under the Waiver

of Premium provision becomes effective "as of the first Premium Due Date on or next following

_____

[40]*Ray v. UNUM Life Ins. Co. of Am.*, 214 F.3d 482, 485-86 (10th Cir. 2002) (quoting
*Nance*, 294 F.3d at 1267-68).

[41]*Id*. (quoting *Nance*, 294 F.3d at 1268).

[42]*Nance*, 294 F.3d at 1268.

[43]*Lunt v. Metro. Life Ins. Co.*, 2007 WL 1964515, at *6 (D. Utah July 2, 2007); *Streeter v.
Metropolitan Life Ins.*, 2006 WL 2944876, at *1 & n.14 (D. Utah Oct. 13, 2006).

[44]Rec. at 6.

[45]*Id*. at 9 (emphasis added).

10

the date of the Employee's proof of Total disability is *approved by the Company*."[46]  The Policy

goes on to state that "[p]roper proof of Total Disability must be submitted to the Company" and

"[u]pon receipt *and approval of proper proof of Total Disability*, the Company will acknowledge

in writing the Employee's Total Disability."[47]

       Considering the language of the Group Life Insurance Policy, the Court finds that it

sufficiently conveys discretion to Defendant, at least as to the Waiver of Premium provision.

Therefore, an arbitrary and capricious standard is appropriate here.

>        In applying the arbitrary and capricious standard, the decision will be
> upheld so long as it is predicated on a reasoned basis.  In fact, there is no
> requirement that the basis relied upon be the only logical one or even the
> superlative one.  Accordingly, [the Court's] review inquiries whether the
> administrator's decision resides somewhere on a continuum of
> reasonableness—even if on the low end.
>        A lack of substantial evidence often indicates an arbitrary and capricious
> decision.  Substantial evidence is of the sort that a reasonable mind could accept
> as sufficient to support a conclusion.  Substantial evidence means more than a
> scintilla, of course, yet less than a preponderance.  The substantiality of the
> evidence is evaluated against the backdrop of the administrative record as a
> whole.[48]

       The parties agree that Defendant operates under the same conflict at issue in *Metropolitan

Life Insurance Company v. Glenn*.[49]  The existence of a dual-role conflict does not alter the

---

[46]*Id.* (emphasis added).

[47]*Id.* at 10 (emphasis added).

[48]*Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks and citations omitted).

[49]554 U.S. 105 (2008).

standard or review, but is a "factor in determining whether there is an abuse of discretion."[50]

Thus, the Court will consider Defendant's conflict of interest in making its determination of this

matter.

## III.  DISCUSSION

Plaintiff challenges Hartford's decision in terminating Ms. Benson's Waiver of Premium

benefit on the following grounds:

> [Hartford] ignored statements from [Ms. Benson], Dr. Abdulla and Dr. Chekiri
> documenting her disability, failed to collect any medical records for [Ms. Benson],
> failed to review any information from UNUM's disability file, failed to take into
> account [Ms. Benson's] disabled status with SSDI and UNUM, failed to inform
> [Ms. Benson] at the end of her appeal period of her right to obtain continued
> insurance coverage under the policy by paying the premium for coverage herself,
> and failed to give Zions an opportunity to allow [Ms. Benson] to continue her
> coverage for up to 12 months following her loss of eligibility for the waiver of
> premium.[51]

Plaintiff also argues that University Disability Consortium reviewers were financially dependent

on Hartford and were not provided adequate documentation to provide a full and fair review of

Ms. Benson's claim.

The Court will discuss each of these arguments in turn.

## A.    TOTAL DISABILITY

Plaintiff fist argues that the record establishes that Ms. Benson continued to be disabled

when Hartford terminated her Waiver of Premium benefit, until her death in August 2009.

Plaintiff further argues that Defendant had to determine that Ms. Benson was capable of

---

[50]*Id*. at 115 (quotation marks and citations omitted).

[51]Docket No. 51, at 19-20.

performing full time, rather than part time, work in order to terminate the Waiver of Premium Benefit.

The Group Life Insurance Policy provides for a Wavier of Premium benefit if an employee is totally disabled.  Under the Policy, "'Totally Disabled' and 'Total Disability' mean that the Employee is unable due to bodily injury or sickness to engage for remuneration or profit in any and every occupation or business for which he or she is or becomes reasonably suited by education, training, or experience."[52]  "Employee" is defined as a person "who works full-time for the Policyowner."[53]

Plaintiff argues that by using the term "Employee" in determining total disability, Defendant was required to determine that Ms. Benson was capable of performing full-time work before terminating her Waiver of Premium benefit.  Since no physician involved in the treatment or review of Ms. Benson's claim opined that she could work full-time, Plaintiff argues that Defendant had no basis to terminate her Waiver of Premium benefit.

Defendant argues, however, that in order for Ms. Benson to receive a Waiver of Premium benefit, she had to be totally disabled.  Defendant argues that the definition of totally disabled under the Group Life Insurance Policy does not require full-time work.  Rather, under the language of the Policy, a person is not totally disabled if he or she is capable of performing work "for remuneration or profit in any and every occupation or business for which he or she is or becomes reasonably suited by education, training, or experience."  Defendant argues that the use

---

[52]Rec. at 8.

[53]*Id.* at 7.

of "Employee" in determining total disability does not alter this fact in that the Policy uses the term "Employee" to describe Zion employees who are eligible for benefits.

The Court must reject Plaintiff's argument.  There is nothing in the Policy to suggest that Defendant was required to determine that Ms. Benson was able to perform full-time work before terminating the Waiver of Premium benefit.  Rather, the definition of total disability is limited to those who are unable "to engage for remuneration or profit in any and every occupation or business for which he or she is or becomes reasonably suited by education, training, or experience."  Nothing in this definition requires a finding that the individual is able to perform full-time work.  While the use of the word "Employee" lends credence to Plaintiff's argument, the Court agrees with Defendant that the term, in this context, is meant to denote an employee of Zion who is eligible for benefits and is more akin to "insured."  Therefore, the Court finds that Defendant did not need to determine that Ms. Benson was able to perform full-time work before terminating the Waiver of Premium benefit.  As the language of the Policy states, Defendant need only determine that Ms. Benson could "engage for remuneration or profit in any and every occupation or business for which he or she is or becomes reasonably suited by education, training, or experience."

Substantial evidence in the record supports Hartford's finding that Ms. Benson could engage in part-time sedentary work.  The reviews of both Dr. Chekiri and Dr. Ruffell provide evidence that Ms. Benson was not "totally disabled" as required by the policy.  Even Ms. Benson's own doctor, Dr. Abdulla, provided evidence, though contradictory, that supports a finding that Ms. Benson was no longer totally disabled and, thus, no longer entitled to the Waiver

of Premium benefit.  There is certainly evidence supporting Plaintiff's claim that Ms. Benson

continued to be totally disabled up to the time of her death.  As stated, however, "there is no

requirement that the basis relied upon be the only logical one or even the superlative one."[54]

Rather, the decision need only be supported by substantial evidence, which it is here.

B.      FAILURE TO GATHER INFORMATION

Plaintiff argues that Defendant failed to gather medical records and other information

necessary to comply with its fiduciary and claims-processing responsibilities under ERISA.

Specifically, Plaintiff argues that Defendant failed to collect any medical records for Ms. Benson,

did not request any information from UNUM, and made no attempt to request information from

the Social Security Administration regarding Ms. Benson's eligibility for benefits under that

program.

Plaintiff's argument that Hartford failed to request medical records is contradicted by the

record.  Hartford requested Dr. Abdulla "provide any treatment notes for the period of January 1,

2008 to the present."[55]  The record indicates that Ms. Benson was only receiving treatment

through Dr. Abdulla[56] and that Dr. Abdulla first began treating Ms. Benson in 2008.[57]  Dr.

---

[54]*Adamson*, 455 F.3d at 1212.

[55]Rec. at 96.

[56]*Id*. at 29.

[57]*Id*. at 129.

Abdulla did, in fact, provide Hartford with treatment records.[58]  Hartford reviewed these records and provided them to University Disability Consortium for review.

The Court finds Hartford's actions to be appropriate as the documents requested and received were tailored to the question before Hartford: whether Ms. Benson continued to be totally disabled.  While Plaintiff faults Defendant for not seeking more records, the records Hartford sought were those most relevant to its determination.  Hartford specifically sought and received records from Ms. Benson's only treating physician during the relevant time period.

Plaintiff also argues that Hartford should have sought records from UNUM, the administrator of the Zion Long Term Disability Plan, and the Social Security Administration, from which Ms. Benson was receiving benefits.  However, whether Ms. Benson continued to be "totally disabled" under the Policy and whether Ms. Benson was entitled to long term disability and/or social security benefits are different issues.[59]  Therefore, there is no requirement that Hartford seek out records from either UNUM or the Social Security Administration.

C.    CONTINUED LIFE INSURANCE COVERAGE

Plaintiff argues that Hartford failed to give Ms. Benson or Zions an opportunity to continue Ms. Benson's life insurance coverage after the Waiver of Premium benefit was terminated.  Plaintiff's argument consists of three parts.  First, Plaintiff argues that Hartford did not make clear whether the right to convert was mutually exclusive of Ms. Benson's right to appeal or whether the right to convert would be renewed if, after an appeal, Hartford maintained

---

[58]*Id*. at 88-92.

[59]*See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).

its denial.  Second, Plaintiff argues that Hartford failed to inform Ms. Benson of her right to

convert when Hartford informed Ms. Benson of its decision to uphold the denial of benefits.

Finally, Plaintiff argues that Hartford had an obligation to notify Zions that Zions could continue

Ms. Benson's coverage.

Plaintiff's first argument is contradicted by the language of the Policy and other

information in the record.  The Policy provides for the ability to convert the Policy to an

individual life insurance policy in certain circumstances.[60]  The Policy states:

> If an insured becomes entitled pursuant to the above provisions to have an
> individual policy of life insurance issued to him or her without evidence of
> insurability, such right shall terminate (1) 31 days after the termination of the
> coverage relating to such Insured under this policy, or (2) if later, 15 days after
> such Insured receives written notice of his or her right to convert.  This provision
> does continue any insurance beyond the termination date of any coverage
> provided by this policy.[61]

Ms. Benson's Waiver of Premium benefit was terminated on February 20, 2009.[62]  The

letter informing Ms. Benson of the termination contained the following language: "We will,

however, allow you 31 days from the date of this letter to convert your Group Life Insurance

benefit amount of $108,000.00 to an Individual Life insurance Policy at your own expense."[63]

The letter then provided a telephone number to call should Ms. Benson have any questions.[64]

---

[60]Rec. at 15-16.

[61]*Id*. at 16.

[62]*Id*. at 113-15.

[63]*Id*. at 114.

[64]*Id*.

17

Ms. Benson did contact Hartford and was advised that she would need to convert her policy during the appeal process to keep her benefit.[65]

As stated, Plaintiff argues that Hartford did not make clear whether the right to convert was mutually exclusive of Ms. Benson's right to appeal or whether the right to convert would be renewed if, after an appeal, Hartford maintained its denial.  As set forth above, the Policy language makes clear that the right to convert is based on the date of termination of the benefit and is not altered by an appeal.  Further, any confusion created by Hartford's letter was clarified during the conversation Ms. Benson had on March 4, 2009.  Therefore, the Court must reject this argument.

Plaintiff next argues that Hartford failed to inform Ms. Benson of her right to convert when Hartford informed Ms. Benson of its decision to uphold the denial of benefits.  As set forth above, however, Ms. Benson's conversion right terminated 31 days after Hartford made its decision to terminate coverage, not after the appeal was determined.  Therefore, the appeal determination letter correctly did not reference any right to convert.

Finally, Plaintiff argues that Hartford failed to inform Zions of its right to convert.  This argument relies on a provision of the Policy that allows Zions the right to continue an employee's coverage.  Because this is a right of Zions, there is nothing impermissible about failing to include this information in the letter to Ms. Benson.  Further, Plaintiff has provided nothing showing that Hartford was required to inform Zion of its decision to terminate benefits.  As a result, this argument fails.

---

[65]*Id*. at 26.

D.      UNIVERSITY DISABILITY CONSORTIUM

Plaintiff's final argument is that University Disability Consortium reviewers were financially dependent on Hartford and were not provided adequate documentation to provide a full and fair review of Ms. Benson's claim

As set forth above, the Court finds that Hartford gathered and provided to Dr. Chekiri and Dr. Ruffell all records it had received from Plaintiff's only treating physician during the relevant time period.  Further, Plaintiff has provided nothing to suggest that Dr. Chekiri and Dr. Ruffell were somehow biased in the determination that Ms. Benson was not totally disabled.  Therefore, the Court will deny Plaintiff's claim on this ground.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 50) is DENIED. It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 53) is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.  The hearing set for November 17, 2011, is STRICKEN.

DATED   November 1, 2011.

BY THE COURT:

TED STEWART
United States District Judge

19